IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

ROBERT SMITH, JR., *et al.*,

      Plaintiffs,

        v.

TOYOTA MOTOR CREDIT
CORPORATION,

      Defendant.

           CIVIL NO.: WDQ-12-2029

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Robert Smith, Jr. and Brittney E. Williams (collectively, the "Plaintiffs"), on behalf of themselves and others similarly situated, sued Toyota Motor Credit Corporation ("TMCC") in the Circuit Court for Baltimore City, Maryland, for violating the Maryland Credit Grantor Closed End Credit Provisions (the "CLEC"),[1] and related claims.  On July 9, 2012, TMCC removed the action to this Court.  For the following reasons, TMCC's motion to dismiss will be granted in part and denied in part.[2]

---

[1] Md. Code Ann., Com. Law §§ 12-1001, *et seq.*

[2] TMCC has also requested the Court to take judicial notice of Maryland Senate Bill 591 of 1983.  ECF No. 20.  The request is unopposed, *see* docket, and will be granted.  *See SPS Ltd. P'ship, LLLP v. Severstal Sparrows Point, LLC*, 808 F. Supp. 2d 794, 803 (D. Md. 2011) ("[O]n a 12(b)(6) motion the court may properly take judicial notice of matters of public record." (internal quotation marks omitted)).

I. Background[3]

On July 29, 2005 and April 26, 2006, respectively, Smith and Williams purchased Toyota vehicles from Maryland dealerships. Compl.[4] ¶¶ 10, 22; id., Exs. A, D. The Plaintiffs obtained financing for their purchases through retail installment sale contracts ("RISCs") (the "Contracts"). Compl. ¶¶ 10, 22; see id., Exs. A, D.[5] Both RISCs were subject to the CLEC, and were assigned to TMCC. Compl. ¶¶ 30-31; id., Exs. A, D.

On November 9, 2011, after Smith purportedly defaulted on his payments, TMCC repossessed Smith's car. Compl. ¶¶ 13, 21.[6]

---

[3] On a motion to dismiss, the well-pled allegations in the complaint are accepted as true. *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). The Court will consider the pleadings, matters of public record, and documents attached to the motions that are integral to the complaint and whose authenticity is not disputed. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[4] On the docket, ECF No. 2 is labeled "Complaint," and ECF No. 10 is labeled "Supplemental to the Complaint." The parties have since indicated that ECF No. 2 contains exhibits to TMCC's notice of removal, and ECF No. 10 is the complaint. The Court will direct the Clerk to correct the docket. In this memorandum opinion, references to the "Complaint" are references to ECF No. 10.

[5] The complaint mistakenly refers to the Contracts as "finance agreements," *see* Compl. ¶¶ 10, 12, 22, 24, which term is defined by the CLEC as a loan that "[r]esults in or is secured by a first mortgage or a first deed of trust on *residential real property* to be occupied by the borrower." Md. Code Ann., Com. Law § 12-1022(a)(4)(i) (emphasis added).

[6] The CLEC authorizes a credit grantor to repossess tangible personal property securing a loan under an agreement if the

One week later, TMCC sent Smith a "Notice of Repossession and Our Plan to Sell Property." *Id.* ¶ 14; *id.*, Ex. B.  In the post-repossession notice, TMCC informed Smith that his car would be sold at a private sale sometime after December 5, 2011, and explained that if, the car were sold, (1) the money would reduce the amount Smith owed to TMCC; (2) Smith would not be responsible for the difference between the sale price and the amount he owed; and (3) Smith could redeem the car by paying TMCC the past-due amount plus interest, late fees, and other expenses. *Id.*, Ex. B.  On or about January 25, 2012, after Smith's car was sold, TMCC sent Smith a "Repossession Accounting Statement," claiming the right to recover $1544.09 in repossession and repossession sale charges.  Compl. ¶¶ 18, 20; *id.*, Ex. C.

On December 25, 2011, TMCC repossessed Williams's car after she similarly defaulted on her RISC.  Compl. ¶ 25.  On January 5, 2012, TMCC sent Williams a "Notice of Repossession and Our Plan to Sell Property." *Id.* ¶ 26; *id.*, Ex. E.  In its post-repossession notice to Williams, TMCC similarly explained that Williams's car would be sold at a private sale, sometime after January 25, 2012.  Compl. ¶ 29; *id.*, Ex. E.  The notice to

---

consumer borrower is in default.  Md. Code Ann., Com. Law § 12-1021(a)(1).

Williams also referenced her obligation to pay the balance of any resulting deficiencies.  *Id.*, Ex. E.

According to the complaint, TMCC violated the CLEC by: (1) failing to provide the Plaintiffs and other Maryland consumers with adequate pre- and post-repossession notices, and (2) attempting to recover unauthorized repossession deficiencies and expenses.  Compl. ¶¶ 2-4.  The Plaintiffs conclude that, under the CLEC, TMCC "is not entitled to collect a deficiency from Plaintiffs or any other class member."  *Id.* ¶ 4.

On May 18, 2012, the Plaintiffs, on behalf of themselves and those similarly situated, sued TMCC in the Circuit Court for Baltimore City for violating the CLEC, and related claims.  ECF No. 10.[7]  On July 9, 2012, TMCC removed the case to this Court

---

[7] The complaint alleges five causes of action:
  (1) Failing to provide adequate pre- and post-repossession notices, in violation of the CLEC, Md. Code Ann., Com. Law § 12-1021 (Count One);
  (2) Breach of contract (Count Two);
  (3) Declaratory and injunctive relief under the Maryland Declaratory Judgments Act, Md. Code Ann., Cts. & Jud. Proc. § 3-406 (Count Three);
  (4) Restitution and unjust enrichment (Count Four); and
  (5) Engaging in unfair and deceptive trade practices, in violation of the Maryland Consumer Protection Act (the "MDCPA"), Md. Code Ann., Com. Law §§ 13-101, *et seq.* (Count Five).
ECF No. 10 ¶¶ 61-95.
  The Plaintiffs seek: (1) class action certification; (2) a preliminary and permanent injunction enjoining TMCC from "engaging in the practices alleged herein"; (3) an order of mandatory injunction directed to TMCC, to "remove any adverse credit information which may have been wrongfully reported on the consumer reports of the class members"; (4) a declaratory

under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1453, and 28 U.S.C. § 1332(d)(2).  ECF No. 1.[8]  On July 13, 2012, TMCC moved to dismiss.  ECF No. 9.  On August 9, 2012, the Plaintiffs timely opposed TMCC's motion.  ECF No. 18; see ECF No. 17.  On September 5, 2012, TMCC replied.  ECF No. 19.  Also on September 5, TMCC requested this Court to take judicial notice of legislative history in support of its motion to dismiss.  ECF No. 20.  The Plaintiffs did not oppose the request.  See docket.

II. Analysis

  A. Standard of Review

    Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but

---

judgment that TMCC may not collect any claimed deficiency balance, interest, fees, costs, or other charges on a loan account of any class member; (5) statutory damages under the CLEC; (6) enhanced statutory damages under the CLEC; (7) pre- and post-judgment interest; (8) attorney's fees and costs; and (9) "all remedies" available under Maryland law, including punitive damages.  Id. at 21-22.

[8] CAFA creates federal jurisdiction over (and thus allows removal of) any class action in which the amount in controversy exceeds $5,000,000; the class consists of at least 100 proposed members; and "any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A), (5)(B).  The notice of removal states that the amount in controversy is about $30,273,300.00; TMCC has identified "as many as" 4152 Maryland residents who "entered into [RISCs] with TMCC, and whose vehicles were repossessed between May 18, 2009 and the present and subsequently sold at auction, where deficiency balances are still presently owing"; and there is minimal diversity.  ECF No. 1 ¶¶ 5, 7-9, 11 (footnote omitted).

does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged--but it has not shown--that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

B. The Motion to Dismiss

TMCC argues that the complaint is "fatally flawed" because it "hinges on" misapplication of the CLEC. ECF No. 9-1 at 5. The Plaintiffs object that TMCC's CLEC argument runs "contrary to the rules of statutory construction," and asserts that its remaining claims were also sufficiently pled. ECF No. 18 at 14, 27.

1. CLEC Claim (Count One)

"When a buyer finances the purchase of a car with funds advanced by a creditor, the creditor often retains a security interest in the car as collateral." *Ford Motor Credit Co. v. Roberson,* 25 A.3d 110, 114 (Md. 2011). "Should the debtor default on the loan, the security interest enables the creditor to repossess and retain the car for full satisfaction of the debt or to sell it at a 'public auction' or 'private sale' and use the sale's proceeds to decrease the loan obligation of the debtor." *Gardner v. Ally Fin. Inc.*, No. 10, Sept. Term, 2012, 2013 WL 765013, at *3 (Md. Mar. 1, 2013) (*quoting* §§ 12-1021(a), (j)(1), (*l*)(4)(i)). The sale, whether public or private, "must be accomplished in a commercially reasonable manner." § 12-1021(j)(2)(iii). In addition, the credit grantor must comply with several post-repossession notice requirements, both before

7

and after the property is resold. *See id.* §§ 12-1021(e), 12-1021(j)(1)(ii), 12-1021(j)(2).

"If the provisions of this section, including the requirement of furnishing a notice following repossession, are not followed, the credit grantor shall not be entitled to any deficiency judgment to which he would be entitled under the loan agreement." Md. Code Ann., Com. Law § 12-1021(k)(4). Further, under § 12-1018 ("Civil remedies"), the credit grantor "may collect only the principal amount of the loan and may not collect any interest, costs, fees, or other charges with respect to the loan. *Id.* § 12-1018(a)(2). "A credit grantor who *knowingly* violates [the CLEC] shall forfeit to the borrower [three] times the amount of interest, fees, and charges collected in excess of that authorized by [the CLEC]." *Id.* § 12-1018(b) (emphasis added).

In Count One, the Plaintiffs allege that TMCC failed to comply with the CLEC's notice provisions, and is thus barred from collecting any alleged deficiency balance from the Plaintiffs or other class member. Compl. ¶¶ 2-4, 62. TMCC argues that it was not obligated to provide any pre-repossession notice under the CLEC, and asserts that its post-repossession and post-sale notices complied with all relevant provisions. ECF No. 9-1 at 5-7. TMCC concludes that the Plaintiffs have

failed to state a claim for which relief can be granted.  *Id.* at 7.

### a. Pre-Repossession Notice

Section 12-1021(c) governs pre-repossession notice.  The subsection provides, in relevant part:

> (1)  At least 10 days before a credit grantor repossesses any tangible personal property, the credit grantor may serve a written notice on the consumer borrower of the intention to repossess the tangible personal property.
> (2) The notice shall:
> (i) State the default and any period at the end of which the tangible personal property will be repossessed; and
> (ii) Briefly state the rights of the consumer borrower in case the tangible personal property is repossessed.

"To redeem the property, the consumer borrower shall . . . (3) *[i]f the discretionary notice provided for in subsection (c) of this section was given*, pay the actual and reasonable expenses of retaking and storing the property."  *Id.* § 12-1021(h)(3) (emphasis added).

The Plaintiffs allege that TMCC failed to provide them and others with pre-repossession notice, "as required" by the CLEC. Compl. ¶ 2.  The Plaintiffs further allege that, because TMCC did not provide such notice, it is not entitled to charge for repossession costs.  *Id.* ¶ 38.  TMCC argues that it was not statutorily required to provide pre-repossession notice, and failure to do so does not affect its entitlement to repossession

costs because § 12-1021(h)(3) applies to consumer borrowers'
obligations upon redemption.   ECF No. 9-1 at 11-12.

"[A]ll statutory interpretation questions . . . must begin
with the plain language of the statute." *Negusie v. Holder*, 555
U.S. 511, 542 (2009).   "[C]lear language . . . leaves no room
for policy argument.   The rules are applicable, or they are not.
A legal argument predicated on the theory that the rules do not
mean what they say is 'destined to fail.'"   *Steele v. Polymer
Research Corp. of Am.*, No. 85 Civ. 5563 (CSH), 1987 WL 12819, at
*2 (S.D.N.Y. June 18, 1987) (*quoting Eastway Constr. Corp. v.
City of N.Y.*, 762 F.2d 243, 254 (2d Cir. 1985)).   Under the
plain language of § 12-1021(c), pre-repossession notice is
discretionary.   Further, § 12-1021(h)(3) has no application to
TMCC's recovery of repossession costs; on its face, the
subsection governs the costs to be borne by a consumer borrower
who chooses to redeem his property.   The Plaintiffs' claims
under these subsections will be dismissed.

b. Post-Repossession (Pre-Sale) Notice

Sections 12-1021(e) and (j) list requirements for the
timing and content of post-repossession, pre-sale notices.   The
Plaintiffs appear to allege that TMCC's notices violated both
provisions.   *See* Compl. ¶ 34.

i.   § 12-1021(e) Allegations

Md. Code Ann., Com. Law § 12-1021(e) provides that,

10

> [w]ithin 5 days after the credit grantor repossesses
> the tangible personal property[,] the credit grantor
> shall deliver to the consumer borrower *personally or
> send to him at his last known address by registered or
> certified mail*, a written notice which briefly states:
> (1) The right of the consumer borrower to redeem the
> tangible personal property, and the amount payable for
> it;
> (2) The rights of the consumer borrower as to a
> resale, and his liability for a deficiency; and
> (3) The exact location where the tangible personal
> property is stored and the address where any payment
> is to be made (emphases added).

The Plaintiffs allege that TMCC's post-repossession notices "were not sent in the manner statutorily mandated" by § 12-1021(e). Compl. ¶ 34(A). Although the complaint is unclear, the Plaintiffs appear to assert a timeliness argument. Specifically, TMCC repossessed Smith's car on or about November 8, 2011, but did not send the notice of repossession until November 15, 2011--allegedly, two days late. *Id.* ¶¶ 13-14. Similarly, TMCC repossessed Williams's car on or about December 25, 2011, but did not send the notice of repossession until January 5, 2012--allegedly, 6 days late. *Id.* ¶¶ 25-27. TMCC objects that Smith's notice was timely under Maryland computation rules (i.e., excluding the date of repossession, Sunday, and Veteran's Day). ECF No. 19 at 15.[9] TMCC concedes

---

[9] *See also* Md. Code Ann., art. I, § 36 ("In computing any period of time prescribed or allowed by any applicable statute, the day of the act, event, or default, after which the designated period of time begins to run is not to be included."); *id.* ("[I]f the period of time allowed is seven days or less, intermediate

11

that Williams's notice was late--albeit, by only three days--but argues that, because it gave her extra time to redeem, the error was harmless.  TMCC cites two cases in support of its "substantial compliance" argument,[10] but the cases did not address CLEC violations and are therefore inapplicable here. TMCC has not identified--and there does not appear to be--a Maryland case applying the doctrine of "substantial compliance" in this context.

Because at least one of the notices of repossession was untimely, TMCC's motion to dismiss the Plaintiffs' § 12-1021(e) claim will be denied.

### ii.  § 12-1021(j) Allegations

Under § 12-1021(j),

(1)(i) Subject to subsection (*l*) of this section, the credit grantor shall sell the property that was repossessed at:
1. Subject to paragraph (2) of this subsection, a private sale; or
2. A public auction.
(ii) At least 10 days before the sale, the credit grantor shall notify the consumer borrower in writing of the time and place of the sale, by certified mail, return receipt requested, sent to the consumer borrower's last known address.

---

Sundays and holidays shall not be counted in computing the period of time.").

[10] *E.g.*, *Faulk v. Ewing*, 808 A.2d 1262, 1272 (Md. Ct. Spec. App. 2002) (finding, in the Local Government Tort Claims Act context, that "[w]here the purpose of the notice requirements is fulfill-ed, but not necessarily in a manner technically compliant with all of the terms of the statute, this Court has found such substantial compliance to satisfy the statute").

(iii) Any sale of repossessed property must be accomplished in a commercially reasonable manner.

The Plaintiffs allege that TMCC's post-repossession notices violated § 1201(j)(1)(ii), because the notices did not "notify Class Representatives of the time and place of the sale." Compl. ¶ 34(B). TMCC argues that § 1201(j)(1)(ii)'s "time and place" notice requirement only applies to public actions and, because the sale of the Plaintiffs' vehicles was private, there was no CLEC violation. *See* ECF No. 9-1 at 13.[11] In effect, TMCC inserts the qualifying language "[f]or property to be sold at a public auction" before the § 1201(j)(1)(ii) notice requirement. The Plaintiffs object that this qualifying language "cloud[s] an otherwise unambiguous statute." ECF No. 18 at 15.

"As in any case of statutory construction, our analysis begins with the language of the statute." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999). "[A]bsent ambiguity or a clearly expressed legislative intent to the contrary," courts should give a statute its "plain meaning." *United States v. Bell*, 5 F.3d 64, 68 (4th Cir. 1993). Section 12-1021(j)(1) contains three subsections. Subsection (i) requires a credit grantor to sell repossessed property at either a "private sale"

---

[11] TMC additionally argues that the Plaintiffs cannot rely on § 12-1021(k)(4) to contend that TMCC is not entitled to a deficiency, because that provision applies only when "*the vehicle is sold in a public sale.*" ECF No. 9-1 at 15 (emphasis in original).

or a "public auction." *Id.* § 12-1021(j)(1)(i). Subsection (ii) provides that, "at least 10 days before *the sale*, the credit grantor shall notify the consumer borrower in writing of the time and place of the sale, by certified mail, return receipt requested, sent to the consumer borrower's last known address." *Id.* § 12-1021(j)(1)(ii) (emphasis added). Finally, "[a]ny sale of repossessed property must be accomplished in a commercially reasonable manner." *Id.* § 12-1021(j)(1)(iii). Subsection (ii) does not distinguish between public and private sales, and there is no reason to conclude that the legislature intended to insert such language--particularly when it chose to do so in other provisions. *See, e.g., id.* § 12-1021(j)(2).

TMCC's motion cites no statutory language, or principles of statutory interpretation, to support the insertion of "for public auctions" into § 1201(j)(1)(ii). Instead, TMCC relies exclusively on the decision in *Bediako v. American Honda Finance Corp.*, 850 F. Supp. 2d 574 (D. Md. 2012), *appeal filed*, No. 12-1795 (4th Cir. filed June 26, 2012). In *Bediako*, defendant Honda Finance similarly sold plaintiff Bediako's repossessed vehicle at a private sale. *Id.* at 583. In her complaint, Bediako alleged that Honda Finance had violated the CLEC by failing to notify her where and when the sale would occur. *Id.* Honda Finance moved to dismiss. *Id.* at 583. Noting the

14

"fundamental" differences between public and private sales under
the CLEC, the court drew the following "key conclusions":

> First, a credit grantor may sell a repossessed vehicle
> either at a private sale or at a public auction.
> Second, a private sale, by its very nature, is not one
> that takes place in an open auction-like setting, but
> typically is accomplished privately by the receipt of
> bids that are received over a period of time in
> writing or other form of communication. Thus, there
> is no real "time, date and place" in the case of a
> private sale at which a defaulting borrower could
> attend, participate and monitor the public bidding
> process. All that is important for the protection of
> the vehicle owner in the case of a private sale is
> notice of the last date by which his or her vehicle
> can be redeemed. Third, both types of sales are
> required to be conducted in a commercially reasonable
> manner, but more detailed post-sale disclosure
> requirements are imposed in the case of private sales.

*Id.* at 583-84. The court concluded that § 12-1021(j) "does *not*

require compliance with the 'date time and place' notice

requirements of § 12-1021(j)(1)(ii) in the case of private

sales; rather, private sales are subject to the requirement that

they be conducted in a commercially reasonable manner as

mandated by § 12-1021(j)(1)(iii), and with detailed post-sale

disclosures." *Id.* at 584 (emphasis in original).

Notably, the *Bediako* court conducted minimal analysis of

the statutory text--deciding, instead, that the practical

differences between public and private sales warranted the

conclusion that § 12-1021(j)(1)(ii) applies only to the former.

*See, e.g.*, 850 F. Supp. 2d at 585 ("Since it was not to be a

public auction sale but rather a private sale (conducted in most

15

cases behind closed doors), *there would be no point* in giving [the sale's] date, time and location . . . ." (emphasis added)); *id.* ("Time and place notification in the case of a private sale would be *meaningless and nonsensical.*" (emphasis added)). Requiring a credit grantor to disclose the time and place of a private sale may be unnecessary and even "meaningless." However, the sensibleness of the statutory requirements is for the Maryland legislature--not this Court--to decide. The Court does not find *Bediako* persuasive, and will not follow the decision here.[12]

Here, TMCC's post-repossession, pre-sale notices to the Plaintiffs indicated only that their cars would be sold "sometime after" a designated date. *See* Compl., Exs. B, E. They did not indicate the time and place of the sale, as

---

[12] *See* 18 J. Moore et al., *Moore's Federal Practice* § 134.02[1][d], at 134-26 (3d ed. 2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."), *quoted in Camreta v. Greene*, 131 S. Ct. 2020, 2023 n.7 (2011).

The Court notes that Bediako's appeal is currently pending. *See Bediako v. Am. Honda Fin.*, No. 12-1795 (4th Cir., notice of appeal filed June 26, 2012). The Fourth Circuit denied Bediako's motion to certify the question of whether § 12-1021(j)(ii) requires notice of the time and place of a private sale at least 10 days before the sale of repossessed personal property to the Maryland Court of Appeals. *Id.*, ECF No. 48. Oral argument has been scheduled for May 14, 2013. *Id.*, ECF No. 50. This case might benefit from a temporary stay pending the Fourth Circuit's decision in *Bediako*. The Court will direct the parties to file any motion to stay within 14 days of the date of this memorandum opinion and order.

required by § 1201(j)(1)(ii).  *See id.*  Thus, TMCC's motion to

dismiss the Plaintiffs' § 12-1021(j)(1)(ii) claim will be

denied.

### c. Post-Sale Notice

Under § 12-1021(j)(2),

> In all cases of a private sale of repossessed goods
> under this section, a full accounting shall be made to
> the borrower in writing and the seller shall retain a
> copy of this accounting for at least 24 months. This
> accounting shall contain the following information:
>
> (i)  The unpaid balance at the time the goods were
> repossessed;
> (ii) The refund credit of unearned finance charges and
> insurance premiums, if any;
> (iii) The remaining net balance;
> (iv) The proceeds of the sale of the goods;
> (v)  The remaining deficiency balance, if any, or the
> amount due the buyer;
> (vi) All expenses incurred as a result of the sale;
> (vii) The purchaser's name, address, and business
> address;
> (viii) The number of bids sought and received; and
> (ix) Any statement as to the condition of the goods at
> the time of repossession which would cause their value
> to be increased or decreased above or below the market
> value for goods of like kind and quality.

The complaint quotes § 12-1021(j)(2), Compl. ¶ 35, and

emphasizes the effect of failing to complete with pre- *and*

*post-sale* notices about repossession, *id.* ¶¶ 36-37.  In

addition, the complaint alleges that TMCC has assessed,

demanded, and attempted to collect or has collected

deficiency balances from class members, "notwithstanding

[its failure] to comply with the mandatory pre-sale *and*

*post-sale notice requirements* of the CLEC." *Id.* ¶ 40.
These blanket assertions aside, the Plaintiffs have alleged
no facts to support an allegation that TMCC violated the
CLEC's post-sale notice requirements. The Plaintiffs'
claims under § 12-1021(j)(2), to the extent there are any,
will be dismissed.

Thus, TMCC's motion to dismiss Count One will be
granted in part and denied in part.[13]

2. Remaining Claims (Counts Two Through Five)

The Plaintiffs' remaining claims are all predicated on the
CLEC violations alleged in Count One. TMCC argues that these
derivative claims "cannot survive" because the Plaintiffs have
failed to state any actionable CLEC claim. ECF No. 9-1 at 16-
20. The Plaintiffs counter that they have plausibly alleged
CLEC violations, and the remaining claims were also sufficiently

---

[13] TMCC additionally argues that, even if the Plaintiffs had
sufficiently pled CLEC violations, they "cannot" rely on § 12-
1021(k)(4) to argue that TMCC is not entitled to a deficiency.
ECF No. 9-1 at 15. Specifically, TMCC contends that § 12-
1021(k) applies, in its entirety, only to public sales. *Id.* In
support, TMCC notes that § 12-1021(k)(1) provides, "[t]he
provisions *of this subsection* apply to a public sale of property
which secured a loan in excess of $2,000 at the time the loan
was made" (emphasis added). However, unlike subsection (k)(1),
(k)(4) does not contain this limiting language, providing that
"[i]f the provisions *of this section*, including the requirement
of furnishing a notice following repossession, are not followed,
the credit grantor shall not be entitled to any deficiency
judgment to which he would be entitled under the loan agreement"
(emphasis added). Under a plain reading of the statute, (k)(4)
applies to *all* CLEC violations; not just those arising from a
public sale.

pled.  ECF No. 18 at 27-30.  As discussed above, the Plaintiffs have adequately pled violations of the CLEC, under §§ 12-1021(e) and 1201(j)(1)(ii).  Thus, TMCC is not entitled to dismissal of the remaining claims (Counts Two through Five).[14]

III. Conclusion

For the reasons stated above, TMCC's motion to dismiss will be granted in part and denied in part.

_____3/28/13_____
Date

_____[signature]_____
William D. Quarles, Jr.
United States District Judge

---

[14] In addition to their "derivative claim" argument, TMCC offers two additional arguments to support dismissal of the unjust enrichment (Count Four) and MCPA (Count Five) claims.  Neither is persuasive.  As to Count Four, TMCC argues that a quasi-contract claim is unavailable when a contract exists between the parties on the same subject matter.  ECF No. 9-1 at 18 (citing Cnty. Comm'rs of Caroline Cnty., Md. V. J. Roland Dashiell & Sons, Inc., 747 A.2d 600, 606-10 (Md. 2000)).  This argument is unavailing because, as the Plaintiffs note, they are entitled to plead causes of action in the alternative.  Fed. R. Civ. P. 8(d)(2).  As to Count Five, TMCC argues that the Plaintiffs have not alleged that a misrepresentation from TMCC caused them any identifiable damages.  ECF No. 9-1 at 19.  The Plaintiffs counter that they have adequately alleged TMCC's notices "have the effect of misleading their recipients into making payments that they do not owe."  ECF No. 18 at 30; see also Compl. ¶ 91. "As a result of [TMCC's] unfair and deceptive trade practices . . . the Class Representatives and members of the Class were induced to make payments to [TMCC] on deficiency balances, causing the Class Representatives or members of the Class injury and loss."  Compl. ¶ 95.  These allegations are sufficient to bar dismissal.