## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Baltimore Division

| | | |
|---|---|---|
| **ROBERT SMITH, JR.,** *et al.,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | **C.A. No.  1:12-cv-02029-WDQ** |
| **v.** | ) | |
| | ) | |
| **TOYOTA MOTOR CREDIT** | ) | |
| **CORPORATION** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL

Plaintiffs, Robert Smith, Jr., an individual ("Mr. Smith"), and Brittney E. Williams, an individual ("Ms. Williams"), on behalf of themselves and all others similarly situated, pursuant to Rule 105, Local Rules of the United States District Court for the District of Maryland, and Rule 23, Federal Rules of Civil Procedure, file this their Memorandum of Law in Support of Motion for Final Approval of Class Settlement:

### I.  INTRODUCTION

### *A.  SYNOPSIS OF SETTLEMENT*

In this action, Mr. Smith and Ms. Williams (collectively "the Settlement Class Representatives"), have negotiated a settlement with Defendant, Toyota Motor Credit Corporation ("TMCC"), in this consumer class action that will resolve the case on behalf of 2,649 class members ("Settlement Class Members"). The proposed settlement provides for more than $11 million in monetary benefits and significant non-monetary benefits, including the removal of trade lines from credit reporting. A copy of the Class Action Settlement Agreement

-1-

(hereinafter "Settlement Agreement") has been previously filed with the Court.

The proposed settlement, preliminarily approved by the Court on April 28, 2014, provides significant remedies for Settlement Class Members whose vehicles were repossessed by TMCC. All Settlement Class Members will have their deficiency balances reduced to zero and will receive a check for their *pro rata* share of the $425,000 Settlement Fund, after the reduction of attorneys' fees, costs and settlement administration and litigation expense. Upon final approval, checks will be mailed automatically to identified class members who have not opted-out or otherwise excluded themselves, without the necessity of a claim form. No monies will revert to TMCC; any residual from un-cashed settlement checks will be paid over as a *cy pres* award to Maryland Legal Aid Bureau as described below.

This Settlement Agreement is now subject to final approval by this Court. In accordance with the Court's Preliminary Approval Order, notice was sent by first-class United States Mail to the last known address of all Settlement Class Members advising them of the final approval hearing and how their rights may be affected by the proposed Settlement.

As will be demonstrated below, the settlement negotiated by the parties is fair, adequate and reasonable, and provides a substantial benefit to the Settlement Class. For these reasons, the proposed Settlement should be approved by this Court in all respects. A proposed Final Judgment is attached hereto and incorporated by reference as Exhibit "A."

For purposes of the instant Memorandum the following matters of record filed in support hereof are referred to as follows:

- Affidavit of Tristan Kernick of First Class, Inc. ("Settlement Administrator Report"); and

● Affidavit of Robert W. Murphy, Esquire ("Settlement Class Counsel Declaration").

## B. HISTORY OF LITIGATION

The instant action was brought by Mr. Smith and Ms. Williams against TMCC for alleged violation of Md. Ann., Comm. Law §12-1001, *et sequi,* known more commonly as the "Creditor Grantor Closed End Credit Provisions" ("CLEC"), with respect to notice of the repossession and repossession sale of automobiles.

According to the allegations of the Class Action Complaint, on July 29, 2005, Mr. Smith entered into a written finance agreement entitled "Retail Installment Sale Contract - Simple Finance Charge" ("Smith Contract") to finance the purchase of a new 2004 Toyota Tacoma automobile  ("Smith Vehicle") (Complaint - ¶¶ 11-12). On or about November 9, 2011, TMCC repossessed the Smith Vehicle as a result of a purported default under the Smith Contract. On November 15, 2011, TMCC sent to Mr. Smith a document entitled Notice of Repossession and Our Plan to Sell Property ("Smith Notice of Sale"), a copy of which is attached to the Complaint as Exhibit "B".

With respect to Ms. Williams, on April 26, 2006 TMCC and  Ms. Williams entered into a written finance agreement entitled "Retail Installment Sale Contract - Simple Finance Charge" ("Williams Contract") to finance the purchase of a new 2006 Toyota Corolla automobile ("Williams Vehicle") (Complaint- ¶¶22-24). On December 25, 2011, TMCC repossessed the Williams Vehicle as a result of a purported default under the Williams Contract. Thereafter, on January 5, 2012, TMCC sent to Ms. Williams by certified mail a document entitled Notice of Repossession and Our Plan to Sell Property ("Williams Notice of Sale") in purported compliance

with the requirements of CLEC, a copy of which is attached to the Complaint as Exhibit "E."

According to the Complaint filed herein, Plaintiffs alleged the Smith Notice of Sale and the Williams Notice of Sale (hereinafter referred to collectively as the "Notices of Sale") failed:

A.   to comply with the requirements of CLEC §12-1021(e) insofar as the Notices of Sale were not sent in the manner statutorily mandated by CLEC, to-wit: by personal delivery or by registered or certified mail within 5 days after repossession of the collateral; and

B.   to comply with the requirements of CLEC §12- 1201(j)(1)(i) in that the Notices of Sale did not notify Plaintiffs of the time and place of the sale as required by CLEC §12-1201(j)(1)(ii).

(Complaint - ¶ 34)

As a result of the business practices of TMCC with respect to the repossession notices, Mr. Smith alleged and Ms. Williams filed the instant action on behalf of themselves and all others similarly situated seeking statutory damages and other relief against TMCC under the civil remedies provision of the CLEC, §12-1018 and for other relief under Maryland state law.

TMCC has denied liability and has raised defenses, including but not limited to, that the Notices comply with the relevant sections of CLEC.  In particular, in its Motion to Dismiss, TMCC argued that the CLEC requirements were satisfied, relying in part on the ruling in *Bediako v. American Honda Finance Corp.*, 850 F. Supp. 2nd 574 (D. Md. 2012) [DE 9]. After the Court granted in part and denied in part the Motion to Dismiss [DE 24], TMCC filed a Motion for Certification [DE 30] as a result of what TMCC contended was a conflict between this Court's opnion and the *Bediako* decision. After the parties discussed the benefits of

settlement, this Court entered an order staying the proceeding pending completion of mediation [DE 32].

### C. OVERVIEW OF SETTLEMENT

#### 1. Description of Negotiation Process

As detailed in the Settlement Class Counsel Declaration, counsel for Plaintiffs, Attorney Robert W. Murphy and Attorney Jane Santoni (collectively "Settlement Class Counsel") conducted an investigation of the factual and legal matters in the action (Settlement Class Counsel Declaration - ¶3-4).  After motion practice, the parties engaged in settlement negotiations that lasted several months.  In conjunction with these negotiations, the parties exchanged information and documents relevant to the discussions to allow counsel to acquire sufficient knowledge and information to adequately assess the merits of the settlement.  After reaching a resolution in principal at a mediation conducted on November 4, 2013, before the Honorable William J. Cahill (Ret.) in San Francisco, California, the parties negotiated the detailed final terms of the Settlement Agreement presently before the Court for final approval (Settlement Class Counsel Declaration - ¶5).

#### 2. Terms of Settlement

The terms of the Settlement Agreement that was preliminarily approved by the Court provides for the following monetary and non-monetary benefits to the Settlement Class:

1.    Settlement Class: All Maryland residents who entered into a retail installment contract ("RISC") in Maryland (a) within three (3) years preceding the May 18, 2012 filing of the Complaint through the date of preliminary approval; (b) had a RISC which contained an election of Subtitle 10 of Title 12 of the Commercial Law ("CLEC") held by TMCC; (c) had their

vehicles repossessed, but did not receive a post-repossession notice that included the time and place of the private sale of the vehicle, (d) who paid more than the principal amount of the RISC, (e) did not obtain a discharge in bankruptcy, (f) did not have a final judgment in a collection as to any such RISC entered against them in favor of TMCC and (g) did not reinstate their RISCS or redeem the vehicle post-repossession.  The Settlement Class definition was modified by agreement of the Parties and approved by the Court by Order dated June 10, 2014 [DE 41] [Settlement Agreement -  ¶ 11].

2.      <u>Waiver of Deficiency</u>: TMCC shall waive deficiencies arising from the finance contracts of those Settlement Class Members whose motor vehicles were sold by TMCC following repossession. The aggregate total balance of the deficiencies of the Settlement Class Members is approximately Ten Million Six Hundred Thousand Dollars ($10,600,000.00) in principal and interest ("Waived Deficiencies") [Settlement Agreement -  ¶ 1.2(a)].

3.      <u>Dismissal of Collection Actions</u>: TMCC shall dismiss with prejudice any pending lawsuits grounded upon an alleged deficiency or balance due with respect to the installment sales contracts that may have been filed against those Settlement Class Members whose motor vehicles were sold by TMCC following repossession [Settlement Agreement - ¶4.2].

4.      <u>Notification to Credit Reporting Agencies</u>: TMCC shall request that the credit reporting agencies ("CRAs") delete the trade line relating to the installment sales contracts of those Settlement Class Members who defaulted, resulting in the repossession and sale of the Settlement Class Members' motor vehicles [Settlement Agreement - ¶ 1.2b].

5.      <u>Settlement Fund</u>: TMCC shall pay the sum of Four Hundred Twenty Five Thousand Dollars ($425,000.00) ("Settlement Fund"), to be distributed to Settlement Class

Members who timely submit claim forms for their pro rata share of the Settlement Fund after reductions for the payment of the cost and expense of litigation and attorney's fees of Settlement Class Counsel, as approved by the Court [Settlement Agreement - ¶ 1.1].

6.     <u>Attorney's Fees, Costs and Expenses</u>: All attorney's fees, litigation expenses and disbursements on behalf of or by Settlement Class Counsel shall be paid from the Settlement Fund [Settlement Agreement - ¶5].  As to fees, Settlement Class Counsel will ask the Court to award the sum of Two Hundred Ten Thousand Dollars ($210,000.00) which represents less than four (4%) of the value of the total benefit to the Settlement Class ("Attorney Fee Request"). The total benefit of the settlement to the Settlement Class includes the Waived Deficiencies, the Settlement Fund, plus an unknown amount attributable to the deletion of credit information from the credit reports of Settlement Class Members.  In accordance with the requirements of Rule 23, Federal Rules of Civil Procedure, the aforementioned fee request was included as part of the disclosures in the Settlement Class Notice [Motion for Preliminary Approval - Exhibit "B"].

7.     <u>Cost of Settlement Administration</u>: The cost of settlement administration, including but not limited to the cost of printing and mailing the notices to Settlement Class Members shall be paid from the Settlement Fund, subject to approval of the Court [Settlement Agreement - ¶6].

As detailed below, the Settlement Agreement is fair, reasonable and adequate to the Settlement Class.

## II.  STANDARD OF REVIEW OF CLASS ACTION SETTLEMENTS

With respect to approval of class action settlements, Rule 23, Federal Rules of Civil Procedure, provides in pertinent part:

> "[t]he Court must direct notice in a reasonable manner to all class members who would be bound by the proposal. . . the Court may approve it only after hearing and on finding that the settlement. . . is fair, reasonable and adequate."

Rule 23(e)(1) and (2), Fed.R.Civ.P.

The approval of a proposed class action settlement is discretionary with the district court. *Flynn v. FMC Corporation*, 528 F.2d 1169 (4th Cir. 1975), *cert. denied,* 424 U.S. 967 (1976); *Girsch v. Jepson*, 521 F.2d 153, 156 (3rd Cir. 1975); *Ace Heating & Plumbing Company v. Crane Company*, 453 Fd. 2d 30, 34 (3rd Cir. 1971).

Courts consistently favor settlement of disputed claims. *See Williams v. First National Bank*, 216 U.S. 582 (1910); *Weinberg v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982); *DuPuy v. Director, Officer of Worker's Compensation Programs*, 519 F.2d 536,541 (7th Cir.1975), *cert. denied*, 424 U.S.965 (1976).  Nowhere is this policy more appropriate than in class actions:

> In the class action context in particular, "there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.1977). Settlement of the complex disputes often involved in class actions minimizes the litigation expense of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources. *Id.*

*See Armstrong v. Board of School Directors*, 616 F.2d 305, 313 (7th Cir.1980); *see also, Franks v. Kroger,* 649 F.2d 1216, 1224 (6th Cir.1981) *vacated on other grounds and modified*, 670 F.2d 71 (6th Cir.1982) (law generally favors and encourages the settlement of class actions).

"[T]here is a strong initial presumption that the compromise is fair and reasonable." *In re Saxon Securities Litigation, supra,* ¶92,414 (quoting *Katz v. E.L.I. Computer Systems, Inc.*, [1970-71 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶92,994 at 90,676 (S.D.N.Y. 1971)). Accordingly, courts exercise restraint in examining a proposed settlement and recognize that "[s]ettlements, by definition, are compromises which need not satisfy every single concern of the

-8-

plaintiff class, but may fall anywhere within a broad range of upper and lower limits." *In re Saxon Securities Litigation, supra,* ¶92,414 at 92,525 (quoting *Alliance to End Repression v. City of Chicago,* 561 F.Supp. 537, 548 (N.D.Ill.1982)).

### III.  LEGAL ARGUMENT

**A.  Notice to the Settlement Class Has Satisfied the Requirements of Rule 23(c)(2)(B), Fed.R.Civ.P. and Constitutional Due Process Requirements.**

*1.  The Form and Content of the Settlement Class Notice Satisfied the Requirements of Rule 23(c)(2)(B)*

Pursuant to Federal Rule of Civil Procedure 23(b)(3), the best notice practicable under the circumstances must be sent to apprise class members of the pendency of the suit and advising them of their right to opt-out under Rule 23(c). The rule further requires that the notice for a (b)(3) class concisely and clearly state in plain, easily understood language *inter alia* the nature of the action, the definition of the class certified, the right to exclude and object, and the binding effect of the class judgment. Fed.R.Civ.P. 23(c)(2)(B).

In the instant case, the Court preliminarily approved the Settlement Agreement and the proposed Notice to Class ("Settlement Class Notice"), a specimen copy of which was attached to the Motion for Preliminary Approval as Exhibit "C" [DE 37-1].  The Settlement Class Notice provided plenary information for the Settlement Class Members to make informed choices, including the details of the Attorney Fee Request.  *In Re: Fed. Skywalk Cases*, 97 F.R.D. (W.D. Mo. 1982).  Under Rule 23(c)(2)(B), the notice must provide "information that a reasonable person would consider to be material and make an informed, intelligent decision whether to opt out or remain a member of the class and be bound by the final judgment." *In Re: Nissan Motor Corporation Antitrust Litigation*, 552 F.2d 1088, 1105 (5th Cir. 1977); citing with approval in

*Twigg v. Sears Roebuck*, 153 F.3d 1222 (11th Cir. 1998).  The Settlement Class Notice has satisfied the requirements of Rule 23 with respect to form and content.

    2.  *The Best Notice Practicable Has Been Sent to the Members of the Settlement Class.*

    Rule 23(c)(2) requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." When a potential class member's address is known or is readily available with reasonable effort, individual notice by mail is required. *Eisen v. Carlyle & Jacquelyn*, 417 U.S. 156, 173 (1974).

    Rule 23 does not require the parties to exhaust every conceivable method of identifying and providing notice to the individual class members. *Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir.1985). As detailed in the Affidavit of Tristan Kernick of First Class, Inc. filed in support hereof ("Settlement Administrator Report")[DE 43-1], the Settlement Administrator followed its standard practice of processing the Class List through CASS and NCOA Services to obtain the best possible addresses for the Settlement Class Members prior to mail out [Settlement Administrator Report - ¶¶ 5-7]. After the initial mailing, the United States Postal Service returned a small number of class notices with new addresses to the Settlement Administrator, which promptly re-mailed same to new addresses [Settlement Administrator Report - ¶9].  This is sufficient to meet the due process requirements. *In Re: Prudential Insurance Co. of America Sales Practices Litigation*, 177 F.R.D. 216, 239 (D. N.J. 1997)["that some class members may not have received notice evidences only that the extensive notice system was not perfect.  Due process when viewed through the lens of objectivity does not require perfection"]; *Grunin v. International House of Pancakes*, 513 F.2d 114 (8th Cir. 1975)[in antitrust class action, notice adequate where one third of class not reached by mail].

### B.   The Proposed Settlement is Fair, Adequate and Reasonable

*1.  Federal Law Supports Approval of Class Action Settlement Agreements
That Are Fair, Adequate and Reasonable.*

*a.   Overview of Approval Process*

Judicial approval of class action settlements requires a two-step process.  In the first step, the court makes a preliminary determination as to whether the settlement falls "within the range of possible judicial approval."  *H. Newberg, Newberg on Class Actions* (3d Ed. 1993) §11.25, p.11-37.  Once the settlement is found to be within the range of possible approval, a final approval hearing is scheduled and notice is provided to the class. *Id*.  The second step involves final determination, following a hearing at which pertinent evidence and any objections by class members may be considered, that the settlement is fair, reasonable and adequate from the standpoint of the class. *Id*. at §11.41.

*In Warren v. City of Tampa*, 693 F. Supp. 1051 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989), the District Court for the Middle District of Florida described review of class action settlements as follows:

> The Court initially recognizes the principal that settlements are highly favored in the law.  *Miller v. Republic National Life Insurance Company*, 559 F.2d 426 (5th Cir. 1977).  The Court is required to make a two-part determination that: 1) there is no fraud or collusion in reaching settlement, and 2) the settlement is fair, adequate and reasonable.  *Bennett v. Behring Corp.,* 737 F.2d 982 (11th Cir. 1984).
>
> *Id*. at 1054

The evaluation of whether a settlement is fair, reasonable and adequate is committed to the sound discretion of the trial court.  *Flinn v. FMC Corp.,* 528 F.2d 1169 (4th Cir.1975), *cert. denied,* 424 US 967 (1976); *Bennett*, 737 F. 2d at 987.  In making this determination, the trial

court is entitled to rely upon the judgment of experienced counsel for the parties. *Behrens v. Wometco*, 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

### b. Overview of "Jiffy Lube Factors"

The courts have considered several factors in determining whether a class settlement is fair, reasonable and adequate. *See, e.g., Troncelliti v. Minolla Corp*., 666 F.Supp. 750, 752-754 (D.Md.1987); *In re Montgomery County Real Estate Antitrust Litigation*, 83 F.R.D. 305, 315-316 (D.Md.1979). The guideposts — referred to at times as the so-called "*Jiffy Lube* Factors"— are derived from the seminal case of *In re Jiffy Lube Securities Litigation*., 927 F.2d 155 (4th Cir. 1991). The factors are:

(1)     the posture of the case at the time settlement was proposed;

(2)     the extent of discovery that had been conducted;

(3)     the circumstances surrounding negotiations;

(4)     the experience of counsel;

(5)     the relative strength of the plaintiff's case on the merits;

(6)     the existence of any difficulties of proof or strong defenses the plaintiff is likely to encounter if the case goes to trial;

(7)     the anticipated duration and expense of additional litigation;

(8)     the solvency of the defendants and likelihood of recovery in a litigated judgment; and

(9)     the degree of opposition to the settlement.

*Id.* at 159. *See*, *e.g., Troncelliti v. Minolta Corporation*, 666 Fd. Supp. 750, 752-54 (D. Md. 1987); *In re Montgomery County Real Estate Antitrust Litigation*, 83 F.R.D. 305, 315-16 (D.

Md. 1979); *City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 462 (2nd Cir. 1974); *In re A.H. Robins Co.*, 880 F.2d 709, 748-49 (4th Cir.1989). Application of these factors shows that the proposed settlement is fair, adequate, reasonable and in the best interest of the Settlement Class.

> 2.    *Even With a Strong Factual and Legal Case, Settlement Class Members Face a Significant Risk in Establishing Liability and Damages.*

Although the Settlement Class Representatives believe that the claims they have raised are meritorious, they recognize that ultimate success on the merits is by no means assured. During the initial part of this litigation, TMCC had made clear that if this matter were contested, it would vigorously challenge the merits of the claims of the Settlement Class Representatives. TMCC has also contended and continues to contend that it has meritorious defenses to the asserted claims (Settlement Agreement - ¶¶B, H). Of special concern to the Settlement Class Representatives is that the theory of liability under the CLEC — that the time and place of a private sale must be disclosed — was rejected by the *Bediako* Court [DE 9].

> 3.    *The Settlement Terms and Conditions Offer Substantial Benefit to All Settlement Class Members*

> a.   *Overview of Benefits*

Benefit to the Settlement Class is the fundamental test of the reasonableness of a settlement. Here, the proposed settlement provides remedies directly responsive to the primary relief sought by the Settlement Class Representatives — monetary payment from the Settlement Fund and the elimination of any outstanding claimed deficiency balance by TMCC [Settlement Agreement - ¶¶1.1 and 1.2].  As noted, the deficiency balances amount to more than $10.6 million for the Class [Settlement Agreement - ¶1.2a], and  the settlement ensures that TMCC's

-13-

trade line will be deleted from the credit reports of Settlement Class Members [Settlement Agreement - ¶1.2b].

TMCC shall pay the sum of Four Hundred Twenty Five Thousand Dollars ($425,000.00) ("Settlement Fund"), to be distributed to the Settlement Class through one payment per account of their *pro rata* share of the Settlement Fund, after deductions, for the payment of the cost and expense of litigation and attorney's fees of Settlement Class Counsel, class settlement administration expense and the payment of Settlement Class Representative incentive awards, as approved by the Court [Settlement Agreement - ¶¶ 5-7].

### b.  Value of Debt Forgiveness for the Class

Courts often approve class action settlements that employ debt forgiveness and other non-cash benefits as all or part of the settlement consideration.  *In re Lloyd's American Trust Fund Litigation*, 2002 WL 31663577 (S.D. N.Y. 2002); *see*, also, *Cullen v. Whitman Medical Corporation*, 197 F.R.D. 136, 143 (E.D. Penn. 2000)[approval of settlement providing cash and forgiveness of student loan indebtedness of class members and other non-monetary relief]; *Follansbee v. Discover Financial Services, Ltd.,* 2000 WL 804690 at *5 (N.D. Ill. 2000) [settlement included credit for class members to pay down debt to defendant]; *Pigford v. Glickman*, 185 F.R.D. 82, 109 (D.D.C. 1999); *Ballard v. Martin*, 79 S.W. 3rd 838 (Ark. 2002) [settlement consisted in part of debt forgiveness of check cashing loans].

### c.  Value of Clearance of Credit Reports

Pursuant to Paragraph 1.2b of the Settlement Agreement, TMCC agreed to request that the credit reporting agencies ("CRAs") delete its trade lines from the credit reports of the Settlement Class Members ("Credit Amelioration Program").  Settlement Class Counsel

considered the clearance of the credit reports of the Settlement Class Members through the Credit Amelioration Program to be a material, non-negotiable term of the settlement with TMCC.

The benefit of the Credit Amelioration Program is substantial; indeed, such a benefit would be extremely difficult to obtain if the matter were to proceed to trial. Accordingly, the Settlement Agreement provides Settlement Class Members significant meaningful relief beyond the stated dollar value of the Waived Deficiencies and the Settlement Fund.

Indeed, the "recovery" of the Settlement Class when measured in dollars totals over $4,150.00 per class member in cash and debt relief. However, the clearance of consumer reports has value far in excess of the aforementioned figure. If the Court deems it necessary, Settlement Class Counsel will proffer testimony of a nationally known expert on credit scoring who will opine that the economic benefit of such credit relief would be the equivalent of several times the annual earnings of the consumer.[1] When the financial benefits of improved credit ratings for the Settlement Class Members is considered, the economic value of the settlement is many times greater than the dollar recovery. *See, Ciccaron v. B.J. Marchese, Inc.,* 2004 WL2966932*9-10 (E.D.Pa.2004) [in consumer class action, credit report correction for class as equal to the cash portion of the settlement].

The Settlement Class Representatives believe that the total economic benefits to the members of the Settlement Class are well in excess of $11,000,000.00 when all the features of the settlement are considered. The benefits to the Settlement Class are —in a word—

---

[1] Settlement Class Counsel wish to avoid the expense of employing such an expert as it will reduce the Settlement Fund.

outstanding, especially as members of the Settlement Class will receive benefits without the necessity of filing a claim form.

4. *The Time and Expense of Protracted Litigation Makes Settlement Appropriate.*

Settlement promotes the interests of the litigants by saving them the expense of trial of disputed issues and reduces the strain on already overburdened courts. *See, Armstrong, supra,* 616 F.2d at 313; *Newman v. Stein,* 464 F. 2d 689, 691-92 (2d Cir.)*, cert. denied, sub nom.; Benson v. Newman,* 409 U.S. 1039 (1972*); Enterprise Energy, supra,* 137 F.R.D. at 247-48 (class action settlement serves interests of both litigants and public by avoiding a time-consuming trial and appeal).  This position is especially compelling in light of the decision by TMCC to provide complete non-monetary relief to the Class.

5. *There is No Opposition to the Proposed Settlement.*

As detailed above, the Settlement Class received notice of the proposed settlement by first class mail. In response to this notice program, no objections have been raised, and only one class member has opted out, to-wit: Patricia A. Rugemer of Reisterstown, Maryland [Settlement Administrator Report - ¶¶ 10-11].  Based upon the unanimously favorable response to the proposed settlement, there exists no reason to delay final approval. In instances where there are no objections to settlement, it is persuasive evidence that the proposal is fair and reasonable. *In Re Prudential Insurance Co. of Am. Sales Practices Litig.*, 962 F.Supp. 450, 459 (D.N.J.1997); *In Re Surgical Laser Technologies Sec. Lit.*, 1992 U.S.Dist. Lexis 16724-4-5 (E.D.Pa.1992).

6. *Settlement Class Counsel Has Conducted Due Diligence Discovery and Has Negotiated the Settlement From a Well-Informed Perspective.*

In the approximately two years since this class action was initiated, the parties have developed substantial appreciation for the merits of their respective positions before reaching an agreement as to settlement. The parties have conducted formal and informal discovery, including the exchange of information relating to numerosity and other matters germane to certification.

The parties entered into settlement negotiations starting in August, 2013 following the Fourth Circuit's decision in *Bediako v. Am. Honda Fin. Corp.,* No. 12-1795, 2013 U.S.App. LEXIS 15837 (4th Cir. Aug.1, 2013). In conjunction with negotiations, the parties exchanged information regarding class size, scope and damages and exchanged documents relevant to the settlement discussions. Through this process, Settlement Class Counsel acquired sufficient knowledge and information to assess the merits of the claims and of potential settlement [Settlement Class Counsel Declaration - ¶¶3-4].

The settlement discussions were successfully concluded at a mediation with the Honorable William J. Cahill (Ret.) on November 4, 2013,  with a written term sheet drawn up by counsel. Once the general terms of the settlement were reached, the parties continued to negotiate the specific provisions and language of the agreement over the next several weeks [Settlement Class Counsel Declaration - ¶¶5-9 ].

7. *Settlement Class Counsel Believes That the Settlement is Fair, Reasonable and in the Best Interests of Settlement Class Members.*

The opinion of experienced class action counsel with substantial experience in litigation of similar size and scope is an important consideration. *See, In re Domestic Air Transportation Antitrust Litigation, supra,* 148 F.R.D. at 312; *Andrews v. Ocean Reef Club, Inc.*, 1993 WL

-17-

563622, *3 (Fla. Cir. Ct. 1993). In the instant action, Settlement Class Counsel has significant experience in litigating consumer class actions, including approximately 40-50 certified classes involving repossessed personal property. *See*, e.g., *Martinez v. FMS Inc.*, 2008 WL 4010101 (M.D. Fla. 2008); *Brown v. SCI Funeral Services of Florida, Inc.*, 212 F.R.D. 602 (S.D.Fla.2003); *Baez v. Wagner & Hunt, P.A.*, 442 F.Supp. 2d 1273 (S.D. Fla. 2006); *Jansen v. West Palm Nissan, Inc.*, 2006 WL 1582068 (S.D. Fla. 2006); *Tyrell v. Robert Kaye & Associates, P.A.*, 223 F.R.D. 686 (S.D. Fla. 2004); *Westlake Financial Services v. Ray*, 923 So.2d 555 (Fla. 4th DCA 2006).

"While the opinion and recommendation of experienced counsel is not blindly followed by the trial court, such opinion should be given great weight in evaluating the proposed settlement." *Flinn v. FMC Corp.,* 528 F.2d 1169, 1173 (4th Cir.1975). "Where experienced counsel have engaged in arm's length negotiations to reach a settlement, the trial court is entitled to rely on their judgment." *Spencer, supra,* ¶93,124 at 95,530; *see also Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)(court should defer to judgment of experienced counsel who has competently evaluated the strength of his proofs).

Here, the settlement is the product of extensive, adversarial, arm's length negotiations conduct by counsel experienced in all aspects of class action litigation, and particularly experienced in the repossession law context. As discussed above, the proposed settlement offers the Settlement Class a substantial portion of the relief sought and which could be obtained at trial. Thus, in counsel's view, the proposed settlement is fair, reasonable and in the best interest of the Settlement Class [Settlement Class Counsel Declaration - ¶7].

8. *The Parties Negotiated the Proposed Settlement in Good Faith.*

The proposed settlement was negotiated at arm's length, after months of negotiation. The parties completed a Term Sheet following mediation before the Honorable William J. Cahill (Ret.). For several months following mediation, settlement negotiations were conducted before the final terms of the Settlement Agreement were reached [Settlement Class Counsel Declaration - ¶¶1-8].

From Settlement Class Counsel's perspective, the negotiation process was conducted in accordance with the "Standards and Guidelines for Litigating and Settling Class Actions" ("NACA Class Settlement Guidelines") promulgated by the National Association of Consumer Advocates ("NACA"). The NACA Class Settlement Guidelines were first published at 176 F.R.D. 375 (1997) and available in revised form at http://www.naca.net/assets/media/revisedguidelines.pdf. Thus, there is not even a hint of bad faith or collusion surrounding the proposed settlement to undermine its fairness or adequacy. *See, Cleveland Browns, supra,* 758 N.E.2d at 310 [Settlement Class Counsel Declaration - ¶5-7].

**C. This Court, Maryland State Courts and Courts Throughout the United States Have Approved Similar Consumer Class Action Settlements Involving Allegedly Defective Post-Repossession Notices.**

Approval of the proposed settlement in this case is further supported by the approval of similar class actions by this Court, the state courts of Maryland, and courts throughout the United States which involve violations of CLEC or similar statutes, most notably Article 9 of the Uniform Commercial Code ("UCC"). The following is a synopsis of recent class settlements in similar cases:

_Shelton v. Crescent Bank & Trust; United States District Court, District of Maryland;_
_Case No.:08-CV-1799-RDB_
Class size - 308 class members
Description of Primary Claims - violation of Maryland Credit Grantor Closed-End Credit
Provisions Act ("CLEC") and Maryland Consumer Protection Act.
Settlement Proceeds - Settlement class fund established in the amount of $206,546.76 to
class members who submit claim forms.
Attorney's Fees and Incentive Award - ⅓ of class settlement fund for attorneys fees
together with $2,500 incentive award.

_Watts v. Capital One Auto Finance; United States District Court, District of Maryland;_
_Case No.07-CV-03477_
Class Size - 2,169 class members
Description of Primary Claims - violation of CLEC and Maryland Consumer Protection
Act.
Details of Settlement - Waiver of deficiency totaling $28 million together with
establishment of $990,00 class settlement fund.
Attorneys' Fees and Incentive Award - ⅓ of class settlement fund for attorneys fees
together with $5,000 incentive award.

_Crowder v. Americredit Financial Services; United States District Court, District of_
_Maryland; Case No.:06-CV-707_
Class Size - 2,550 class members
Description of Primary Claims - violation of CLEC
Details of Settlement - Waiver of deficiency totaling $20 million with $2.4 million for
class settlement fund.
Attorneys' Fees and Incentive Award - ⅓ of class settlement fund for attorneys fees
together with $5,000 incentive award.

_Sheeler v. Wilmington Trust, FSB; United States District Court, District of Maryland;_
_Case No.:11-CV-02444- MJG_
Class Size - 480 class members
Description of Primary Claims - violation of CLEC and Maryland Consumer Protection
Act
Details of Settlement - Waiver of deficiency totaling $3 million together with
$200,000.00 for class settlement fund
Attorneys's Fees and Incentive Award - $120,000.00 from class settlement fund for
attorneys fees together with $5,000.00 incentive award

_Herbert v. Greater Nevada Federal Credit Union; Second Judicial District Court for_
_the State of Nevada, in and for Washoe County; Case No.: CV-11-02600_
Class Size - 1,395 class members

-20-

Description of Primary Claims - violation of Article 9, UCC and Nevada Retail Installment Sales Act
Details of Settlement - Waiver of deficiency totaling $5,481,000.00 together with $880,000.00 for class settlement fund.
Attorneys's Fees and Incentive Award - 25% of class settlement fund for attorneys fees together with $5,000.00 incentive award.

*Superior Finance Company v. Torres; In the District Court, Cleveland County, Oklahoma; Case No.: CS-2011-765*
Class Size - 2,200 class members
Description of Primary Claims - violation of Article 9, UCC
Details of Settlement - Waiver of deficiency totaling $10 million together with $1.1 million for class settlement fund
Attorneys's Fees and Incentive Award - 25% of class settlement fund for attorneys fees together with $10,000.00 incentive award to two separate class representatives.

*Cosgrove v. Citizens Automobile Finance, Inc.; In the United States District Court, Eastern District of Pennsylvania; Case No.: 09-CV-1095*
Class Size - 1,853 class members
Description of Primary Claims - violation of Article 9, UCC
Details of Settlement- Waiver of deficiency totaling $7.75 million together with $2.9 million for class settlement fund
Attorney's Fees and Incentive Award - $1.25 million for attorneys fees together with $7,500.00 incentive award.

*Florida Commerce Credit Union v. Bruner; In the Circuit Court, 2nd Judicial Circuit, in and for Leon County, Florida; Case No.: 2008-CA-1791*
Class Size - 670 class members
Description of Primary Claims - violation of Article 9, UCC
Details of Settlement - Waiver of deficiency totaling $5 million together with $600.00 to each class member who timely submitted claim form.
Attorneys's Fees and Incentive Award - $150,000.00 for attorneys fees together with $5,000.00 incentive award to class representatives.

*Jenkins v. Hyundai Motor Finance Company; In the United States District Court, Southern District of Ohio; Case No.: C2-04-720*
Class Size - 445 class members
Description of Primary Claims - violation of Article 9, UCC
Details of Settlement - Waiver of deficiency totaling $5.6 million, no cash payment to class.
Attorneys's Fees and Incentive Award - $443,500.00 for attorneys fees together with $5,000.00 incentive award to class representative

_Ross v. CitiFinancial Auto, Ltd.; In the United States District Court, Middle District of Florida; Case No.: 12-CV-1173-TJC_   (Preliminary Approval Pending)
Class Size - 1,107 class members
Description of Primary Claims - violation of Article 9, UCC
Details of Settlement - Waiver of deficiency totaling $12,200,000, no cash payment to class.
Attorneys's Fees and Incentive Award - $217,500.00 for attorneys fees together with $5,000.00 incentive award to class representative

_Bank of Oklahoma v. Kelley; In the District Court, Cleveland County, Oklahoma; Case No.: CJ-2011-1806_
Class Size - 408 class members
Description of Primary Claims - violation of Article 9, UCC
Details of Settlement - Waiver of deficiency totaling $3 million, together with $150.00 to each class member.
Attorneys's Fees and Incentive Award - $63,500.00 for attorneys fees together with $5,000.00 incentive award to class representatives

As evidenced by a comparison to similar settlements, this factor weighs heavily in support of settlement.


## IV.  CONCLUSION

For all the foregoing reasons, the Settlement Class Representatives respectfully request that this Court approve the settlement as fair, adequate and reasonable.

Respectfully submitted,

/s/ Robert W. Murphy
ROBERT W. MURPHY
Florida Bar No. 717223
1212 S.E. 2nd Avenue
Ft. Lauderdale, FL 33316
(954) 763-8660 Telephone
(954) 763-8607 Telecopier
rwmurphy@lawfirmmurphy.com
Counsel for Plaintiff _pro hac vice_

-22-

JANE SANTONI, ESQUIRE
Federal ID No.: 05303
Williams & Santoni, LLP
401 Washington Avenue, Ste. 200
Towson, Maryland 21204
(410) 938-8666 Telephone
(410) 938-8668 Telecopier
Email: jane@williams-santonilaw.com
Co-Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 22, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on Christopher M. Loveland, Esquire, c/o Sheppard Mullin Richter & Hampton LLP, 1300 I Street, N.W., 11th Floor East, Washington, D.C., 20005-3314; Anna S. McLean, Esquire, c/o Sheppard Mullin Richter & Hampton LLP, Four Embarcadero Center, 17th Floor, San Francisco, CA 94111; Jane Santoni, Esquire, Williams & Santoni, LLP, 401 Washington Avenue, Suite 200, Towson, Maryland 21204, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

/s/ Robert W. Murphy
Attorney